UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-cv-105-RJC

| | |
|---|---|
| **In re:** ) | |
| ) | |
| **BESTWALL LLC,** ) | |
| ) | |
| Debtor. ) | |
| _____ ) | **ORDER** |
| ) | |
| **FUTURE CLAIMANTS** ) | |
| **REPRESENTATIVES, et al.** ) | |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | |
| ) | |
| **BESTWALL LLC and GEORGIA-** ) | |
| **PACIFIC LLC,** ) | |
| ) | |
| Appellees. | |

**THIS MATTER** comes before the Court on an appeal of the Bankruptcy Court's Memorandum Opinion and Order Granting the Debtor's Request for Preliminary Injunctive Relief (Doc. No. 1-1); the Bankruptcy Court's Order Granting in Part, Denying in Part Motion of the Official Committee of Asbestos Claimants to Reconsider and Amend the Memorandum Opinion (Doc. No. 1-2) (together the "Bankruptcy Court's Orders" or the "Orders"); Appellants' Motion for Leave to Appeal the Injunction Order (the "Motion for Leave") (Doc. No. 2); and Appellees' Responses to the Motion for Leave to Appeal (Doc. Nos. 3 & 4).[1] The Court has reviewed the record on appeal, briefing, and applicable law. For the reasons stated herein, the Motion for Leave to Appeal the Injunction Order (Doc. No. 2) is **DENIED as moot** and the Bankruptcy Court's

---

[1] The Bankruptcy Court's Orders, factual background, and issues are the same for case numbers 3:20-cv-103-RJC and 3:20-cv-105-RJC. Therefore, the Court addresses all arguments for each appeal herein. This Order mirrors the Order entered in case 3:20-cv-103-RJC.

1

Orders are **AFFIRMED**.

## I. BACKGROUND

### A. The Debtor

The Debtor Bestwall LLC (the "Debtor") was formed on July 31, 2017, as a result of a corporate restructuring of Georgia-Pacific LLC. (Adversary Proceeding No. 17-03105, Doc. No. 104 ¶¶ 31-32). Prior to July 2017, the Debtor's predecessor underwent various corporate changes from its inception in 1927, eventually resulting in the Georgia-Pacific LLC, a wholly-owned subsidiary of Georgia-Pacific Holdings, LLC (from its inception in 1927 to July 31, 2017 referred to herein as "Old GP"). (*Id.* ¶ 5).

In 1965, Old GP acquired Bestwall Gypsum Company. (*Id.* ¶ 12). Bestwall Gypsum Company manufactured certain asbestos-containing products, principally joint compound, which Old GP continued to manufacture and sell following the acquisition. (*Id.* ¶¶ 22-23). Old GP had a decades-long history of asbestos litigation derived from its acquisition of Bestwall Gypsum Company and its asbestos-containing products. (*Id.* ¶¶ 22-30).

As a result of the asbestos litigation, on July 31, 2017, Old GP underwent a corporate restructuring in which Old GP ceased to exist and two new entities were created. (*Id.* ¶¶ 31-32). The restructuring occurred by way of a series of transactions that included Old GP converting to a Texas limited liability company. (*Id.* ¶ 14). Then, Old GP effected a divisional merger under a Texas merger statute which allows a single Texas entity to "merge" into two or more entities. *See* Tex. Bus. Org. Code § 1.002(55)(A). The divisional merger was accomplished by way of a Plan of Merger. (*Id.* ¶¶ 6, 14). Pursuant to the Plan of Merger, the Old GP ceased to exist and two new entities were created, each a direct wholly owned subsidiary of Georgia-Pacific Holdings, LLC, as follows:

(1) A limited liability company which ultimately became Bestwall LLC, the Debtor, that received certain assets and liabilities of Old GP, including (a) Old GP's asbestos liabilities;[2] and (b) certain other assets, including three bank accounts with approximately $32 million in cash, all contracts of Old GP related to its asbestos-related litigation, real estate in Mt. Holly, North Carolina, and all equity interests in a non-debtor projected to generate annual cash flow of $18 million starting in 2019, and valued at approximately $145 million. (*Id.* ¶¶ 14-16).

(2) Georgia-Pacific LLC which received all other assets and liabilities of Old GP (the "New GP"). (*Id.* ¶¶ 14-15).

The Debtor also agreed to indemnify New GP for any losses it suffers relating to the Debtor's asbestos liabilities. (*Id.* ¶ 45).

Relevant here, the Debtor entered into the following additional agreements. The Debtor became payee to a Funding Agreement with New GP, under which the Debtor is entitled, to the extent its assets are insufficient, to funding for all costs and expenses the Debtor incurs in the normal course of its business and the funding of a section 524(g) asbestos trust. (*Id.* ¶ 17). The Debtor and New GP entered into a Services Agreement pursuant to which the Debtor will receive corporate and administrative services from New GP, including legal, accounting, tax, human resources, information technology, and risk management. (*Id.* ¶ 18). They also entered into a secondment agreement by which New GP assigned to the Debtor on a full-time basis certain of its employees, including the Debtor's Chief Legal Officer. (*Id.* ¶ 19). The seconded employees have institutional and historical knowledge of the litigation stemming from Debtor's asbestos-related liabilities. (*Id.*). Under the secondment agreement, the Debtor pays New GP a percentage of a fee based on the percentage of that employees' time the Debtor needs each month. (*Id.*).

As of September 30, 2017, there were approximately 64,000 asbestos-related claims pending against the Debtor, including approximately 22,000 that were being actively litigated and

---

[2] With the exception of asbestos liabilities for which the exclusive remedy is provided under a workers' compensation statute or similar law. (Adv. Proc. Doc. No. 104 ¶ 15).

approximately 13,300 claims pending on inactive dockets, with thousands more anticipated in the future.  (*Id.* ¶ 23).

## B. The Bankruptcy Case

Thereafter, on November 2, 2017, the Debtor filed a Chapter 11 bankruptcy case in this District for the purpose of resolving the asbestos-related claims against it by way of a trust under section 524(g) of the Bankruptcy Code.  (Bankruptcy Case No. 17-31795, Doc. Nos. 1 & 12 at 8).  The Bankruptcy Court approved the appointment of an Official Committee of Asbestos Claimants to represent asbestos claimants' interests (the "Committee") and Sander L. Esserman as Legal Representative for future asbestos claimants' interests (the "Future Claimants Representative") (together, the "Appellants").  (Bankr. Doc. Nos. 97 & 278).

## C. The Bankruptcy Adversary Proceeding

On the same day the bankruptcy petition was filed, the Debtor filed an adversary proceeding against plaintiffs and prospective plaintiffs in asbestos-related actions against certain affiliated non-debtors (the "Adversary Proceeding").  (Adv. Proc. Doc. No. 1 ¶¶ 12-13).  In the Adversary Proceeding, and through a related motion (the "Motion for Injunction"), the Debtor sought to enjoin pursuant to section 105(a) of the Bankruptcy Code, the continuation or commencement of any action seeking to hold the following parties liable for any asbestos-related claims (the "Asbestos-Related Claims"): (1) the Old GP, (b) the New GP, or (c) certain non-debtor affiliates of the New GP and the Debtor (together, the "Non-Debtor Protected Parties").  (Adv. Proc. Doc. Nos. 1 & 2).  Alternatively, the Debtor sought a declaration that the automatic stay applied to prohibit the commencement or continuation of asbestos related actions against the Non-Debtor Protected Parties.  *Id.*  The Appellants opposed the Motion for Injunction and the relief the Debtor sought in the Adversary Proceeding.  (Adv. Proc. Doc. Nos. 47, 49, 110, 118).  New GP successfully intervened in the Adversary Proceeding.  (Adv. Proc. Doc. No. 156).  Through a series

4

of agreed orders, the Bankruptcy Court temporarily enjoined the asbestos-related claims pending further ruling on the Motion for Injunction. (Adv. Proc. Doc. Nos. 30, 32-33, 36, 41, 91, 125, 136, 141, 152, 157, 160, & 162).

Following hearings on the Motion for Injunction, the Bankruptcy Court ultimately granted it. (Doc. No. 1-1). The Bankruptcy Court's Memorandum Opinion and Order Granting the Debtor's Request for Preliminary Injunctive Relief (1) concluded that it had "related to" subject matter jurisdiction under 28 U.S.C. § 1334(b) to issue the injunction; and (2) granted the Motion for Injunction, enjoining pursuant to section 105 of the Bankruptcy Code the Adversary Proceeding Defendants from filing or continuing to prosecute Asbestos-Related Claims against the Non-Debtor Protected Parties (the "Order Granting Injunction"). (Doc. No. 1-1).

The Committee filed a motion to reconsider the Order Granting Injunction asking the Bankruptcy Court to vacate portions of the order addressing the Committee's preemption and due process arguments, and to clarify that the Order did not address whether New GP qualified for relief under section 524(g) of the Bankruptcy Code. (Adv. Proc. Doc. No. 166). In the Bankruptcy Court's Order Granting in Part, Denying in Part Motion of the Official Committee of Asbestos Claimants to Reconsider and Amend the Memorandum Opinion, it denied the request to vacate its conclusions regarding due process and preemption, but clarified that the Order Granting Injunction did not address whether New GP is entitled to relief under section 524(g) of the Bankruptcy Code (the "Reconsideration Order"). (Doc. No. 1-2).

Appellants appealed arguing the Bankruptcy Court did not have jurisdiction to enter the Orders and the Debtor failed to meet its burden establishing the elements necessary for a preliminary injunction. (Doc. No. 6).

## II. STANDARD OF REVIEW

This Court has jurisdiction over "final judgments, orders, and decrees . . . and with leave of court, from interlocutory orders and decrees, of bankruptcy judges . . . ." 28 U.S.C. § 158(a). The Fourth Circuit generally applies two standards of review for bankruptcy appeals: "The Bankruptcy Court's conclusions of law are reviewed *de novo* and its findings of fact are reviewed for clear error." *Campbell v. Hanover Ins. Co.*, 457 B.R. 452, 456 (W.D.N.C. 2011); *In re Lee*, 461 Fed. App'x at 231. "Typically, mixed questions of law and fact are also reviewed *de novo*." *Suntrust Bank v. Den-Mark Const., Inc.*, 406 B.R. 683, 686 (E.D.N.C. 2009); *see In re Litton*, 330 F.3d 636, 642 (4th Cir. 2003). The question of whether a bankruptcy court has subject matter jurisdiction is a question of law reviewed *de novo*. *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010); *In re Celotex Corp.*, 124 F.3d 619, 625 (4th Cir. 1997). A bankruptcy court's decision to grant injunctive relief is reviewed for abuse of discretion. *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1008 (4th Cir. 1986) ("Certainly, the district court did not commit an abuse of discretion in granting the injunction herein."); *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 188 (4th Cir. 2013). An abuse of discretion may occur if a court applies the incorrect legal standard, rested its decision on "a clearly erroneous finding of a material fact," or "misapprehended the law with respect to underlying issues in litigation." *Id.*

## III. DISCUSSION

**A. Appellants' Motion for Leave to Appeal the Bankruptcy Court's Orders is moot.**

As an initial matter, Appellants filed a Motion for Leave to Appeal the Bankruptcy Court's Orders, first arguing that the Orders are final, appealable orders, and even if not, asking the Court to exercise discretion to hear the appeal pursuant to 28 U.S.C. § 158(a)(2)-(3). (Doc. No. 2). Appellees do not dispute that the Bankruptcy Court's Orders are final, appealable orders. (Doc.

No. 3 at 2; Doc. No. 4 at 1). The Court agrees that the Bankruptcy Court's Preliminary Injunction Orders are final, appealable orders over which this Court has jurisdiction to hear the appeal.

Courts take a pragmatic view of finality in the bankruptcy context, such that "orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case." *In re Computer Learning Centers, Inc.*, 407 F.3d 656, 660 (4th Cir. 2005) (citation omitted). Adversary proceedings are considered discrete disputes. *First Owners' Ass'n of Forty Six Hundred v. Gordon Props., LLC*, 470 B.R. 364, 369 (E.D. Va. 2012). An order granting or denying relief from the automatic stay is a final, appealable order. *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020); *In re Lee*, 461 Fed. App'x 227, 231 (4th Cir. 2012). Similarly, courts have found that other similar injunction orders constitute final, appealable orders. *Fung Retailing Ltd. V. Toys R Us, Inc.*, 593 B.R. 724, 731 (E.D. Va. 2018) (concluding injunction order preventing party from prosecuting an action in Hong Kong a final, appealable order); *In re Excel Innovations, Inc.,* 502 F.3d 1086, 1092 (9th Cir. 2007) (concluding injunction order which was in effect an extension of the automatic stay was final, appealable order). Where a bankruptcy court issues a preliminary injunction but contemplates no further hearings apart from the outcome of the reorganization then the injunction order is a final, appealable order. *In re Excel Innovations*, 502 F.3d at 1092-93; *In re Ionosphere Clubs, Inc.*, 139 B.R. 772, 778 (S.D.N.Y.1992).

Here, the Debtor filed the Adversary Proceeding seeking to enjoin the commencement or continuation of asbestos-related claims against the Non-Debtor Protected Parties. The Court granted the relief requested by the Debtor. Appellees concede "[t]here is nothing left to adjudicate in that proceeding." Therefore, the Court concludes the Bankruptcy Court's Orders are final, appealable orders and Appellants' Motion for Leave to Appeal the Bankruptcy Court's Orders is moot.

### B. Future Claimants Representative has standing to appeal the Bankruptcy Court's Orders.

Next, the Debtor argues the Future Claimants Representative does not have standing to appeal the Bankruptcy Court's Orders because the future claimants do not hold claims enjoined by the Bankruptcy Court's Orders. Standing to appeal an order from a bankruptcy court requires the appellant to be "a person aggrieved by the bankruptcy order" which means the person is "directly and adversely affected pecuniarily." *In re Urban Broadcasting Corp.*, 401 F.3d 236, 243-44 (4th Cir. 2005). "An order that diminishes one's property, increases one's burdens, or detrimentally affects one's rights has a direct and adverse pecuniary effect for bankruptcy standing purposes." *In re Smoky Mountain Country Club Prop. Owners' Association, Inc.*, 622 B.R. 653, 657 (W.D.N.C. 2020). Additionally, standing to appeal as a party aggrieved may arise from a party's official duty to enforce the bankruptcy law in the public interest. *In re Clark*, 927 F.2d 793, 796 (4th Cir. 1991). Courts have also held that committees appointed pursuant to 11 U.S.C. § 1103, serve a "watchdog" function and enjoy unique rights and responsibilities, including the ability to appeal orders that run afoul of those rights and responsibilities. *In re Western Pacific Airlines, Inc.*, 219 B.R. 575, 577-78 (D. Colo. 1998).

Here, the Court concludes the Future Claimants Representative has standing to appeal the Bankruptcy Court's Orders. The Bankruptcy Court's Order broadly defines Bestwall Asbestos Claims as "any asbestos-related claims against the Debtor, including all former claims against [the Old GP] related in any way to asbestos or asbestos-containing materials, except for asbestos-related claims for which the exclusive remedy is provided under workers' compensation statutes and similar laws." (Doc. No. 1-1). The Future Claimants Representative represents the interests of future claimants, which, at the time of the Bankruptcy Courts Orders, were future claimants but, based on the definition of Bestwall Asbestos Claims, may later become claimants during the

pendency of the injunction. If so, they will be enjoined from seeking a remedy for their asbestos-related claims through the usual channels against the Non-Debtor Protected Parties. This is a direct and adverse effect on the future claimants pecuniary interests. While the Future Claimants Representative is not the directly affected party, it represents the interest of the future claimants, which by definition cannot defend their own interests. To conclude the Future Claimants Representative does not have standing to appeal the Bankruptcy Court's Orders would defeat the purpose of the Future Claimants Representative's role. Therefore, the Court concludes the Future Claimants Representative has standing to appeal the Orders.

### C. The Bankruptcy Court has subject matter jurisdiction to grant the preliminary injunction.

Pursuant to 28 U.S.C. § 1334, district courts have "original and exclusive" jurisdiction over all cases under the Title 11, and "original but not exclusive" jurisdiction over all civil proceedings arising under, arising in, or related to cases under Title 11. District courts are authorized to refer these cases to bankruptcy judges in their district. 28 U.S.C. § 157(a). In this District, all such cases have been referred to the bankruptcy judges in the District. *See In re Standing Order of Reference re: Title 11*, 3:14-mc-44 (W.D.N.C. Apr. 14, 2014).

A case "arising in" Title 11 is one that is "not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." *Valley Historic Ltd. Partnership v. Bank of New York*, 486 F.3d 831, 835 (4th Cir. 2007) (quotations omitted). "Therefore, a controversy arises in Title 11 when it would have no practical existence but for the bankruptcy." *Id.* A case is "related to" a case under Title 11 when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Valley Historic Ltd. Partnership v. Bank of New York*, 486 F.3d 831, 836 (4th Cir. 2007) (citations and quotations omitted); *In re Celotex Corp.*, 124 F.3d 619, 625-26 (4th Cir. 1997). Therefore, "[a]n action is

9

related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate. *In re Celotex Corp.*, 124 F.3d 619, 625-26 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). This test does not require with any certainty or likelihood that the proceeding could conceivably have an effect on the bankruptcy estate, the possibility itself is sufficient. *Id.* at 626.

The Bankruptcy Court's Order Granting Injunction concluded it had "related to" jurisdiction under 28 U.S.C. § 1334. The Bankruptcy Court determined that failing to grant the Debtor's requested relief could conceivably have an effect on its bankruptcy estate in the following ways: (1) it would defeat the purpose of section 524(g) and the Debtor's Chapter 11 reorganization which was filed to address in one forum all potential asbestos claims against the Debtor and third parties alleged to be liable for asbestos claims against the Debtor; (2) it would distract the Debtor's personnel and impair the ability of Debtor to pursue a plan of reorganization because the personnel who play key roles in the Debtor's reorganization efforts, such as its Chief Legal Officer, would also be responsible for managing and directing the activities in defense of lawsuits against the Non-Debtor Protected Parties; and (3) the Debtor has indemnity obligations, contractually and also possibly under common law, that would make judgments against New GP tantamount to judgments against the Debtor and deplete the assets available to fund a section 524(g) trust.

Here, at a minimum, the Bankruptcy Court had related to jurisdiction because determining whether or not to grant the injunctive relief requested in the Adversary Proceeding could conceivably have an effect on the Debtor's bankruptcy estate. The Debtor admits it filed the bankruptcy case to address the overwhelming asbestos litigation in one forum through a section 524(g). A decision on whether to grant an injunction to the Non-Debtor Protected Parties could defeat the entire purpose of the Debtor's reorganization. For example, if an injunction was not

10

granted and litigation continued to be filed in a multitude of different fora against the Non-Debtor Protected Parties for the same asbestos related claims that the Debtor is liable for then the Debtor would be unable to address all the asbestos-related claims in one forum, which could impact the number and amounts of claims addressed through a potential section 524(g) trust. Thus, the decision whether to grant the injunction could conceivably affect the Debtor's assets and liabilities.

Moreover, the Debtor could decide that without the injunction, reorganization would not be possible or effective and attempt to dismiss or convert its bankruptcy case, which, if granted, could conceivably have an impact on the Debtor's estate. The Appellants argue that exercising jurisdiction here defeats the purpose of a section 524(g) trust because they believe the Non-Debtor Protected Parties should file bankruptcy in order to avail themselves to the protections of the injunctive relief requested. However, this appears to be a more proper argument for addressing the merits of the Adversary Proceeding and/or a section 524(g) rather than the Court's consideration for subject matter jurisdiction which only requires a conceivable effect on Debtor's rights, liabilities, or options.

Additionally, if a preliminary injunction were not granted, Debtor's personnel who are responsible for assisting with its reorganization could be distracted with managing the voluminous litigation against the Non-Debtor Protected Parties in various different forums. Appellants argue that the Debtor's personnel are seconded and therefore New GP can simply "find replacements" for the Debtor "in its over 30,000 employees." (Doc. No. 6 at 30). This argument misses the mark. The fact that the Debtor's personnel could be so consumed with litigation against the Non-Debtor Protected Parties that it would need to find replacement personnel, who then would have to spend time understanding a complicated reorganization, is exactly the type of situation that could conceivably have an effect on the administration of the bankruptcy case.

Last, the Appellants argue there is not subject matter jurisdiction because the indemnity

11

provision was an attempt to impermissibly create jurisdiction and that the provision is circular because ultimately it requires New GP to fund indemnity payments. Since the Court finds related to subject matter jurisdiction exists for the reasons stated above, the indemnity provision is not necessary for related to subject matter jurisdiction. Nevertheless, the Court will address Appellants' arguments. First, the Court is not convinced the indemnity provision was an attempt to create jurisdiction and Appellants have not pointed to evidence rather than their opinions or assumptions for such a conclusion. Indemnity provisions are common provisions in contractual agreements for a multitude of valid reasons other than to create jurisdiction. Appellants arguments otherwise are unavailing to the Court. Next, the Bankruptcy Court did not err in concluding the Funding Agreement acts only as a backstop and requires New GP to provide funds to an asbestos trust only to the extent the Debtor's own assets are insufficient such that it could impact the bankruptcy estate. The Funding Agreement requires the Debtor to exhaust its own assets before any funding becomes applicable, which could affect the way in which the bankruptcy estate is ultimately administered including how a section 524(g) trust is funded and paid. While the Appellants argue these provisions result in ultimately the same pot of money being pushed around between New GP and the Debtor, the payment of indemnification claims could have real time effects on how the Debtor's bankruptcy estate and how a section 524(g) trust is ultimately funded and administered.[3]

---

[3] The Bankruptcy Court's Order did not consider whether it has "arising in" subject matter jurisdiction; however, Appellees argue the Bankruptcy Court also has arising in jurisdiction. Since the Court concludes the Bankruptcy Court clearly, at a minimum, had related to jurisdiction it is not necessary for the Court to analyze in depth whether arising in jurisdiction exists. However, the Court notes that courts in this Circuit find arising in jurisdiction exists when considering whether to grant an injunction under section 105(a), because a section 105 injunction arises only in bankruptcy cases, would have no existence outside of bankruptcy, any such injunction only lasts during the pendency of the bankruptcy case, and is available only because of the equitable powers given to the Bankruptcy Court only under the Bankruptcy Code. *In re Brier Creek Corp. Center Associates Ltd.*, 486 B.R. 681, 685 (E.D.N.C. 2013); *In re DBMP LLC*, No. 20-03004, 2021 WL

### D. The Bankruptcy Court did not abuse its discretion in granting the preliminary injunction.

The Bankruptcy Court's Orders concluded the Debtor met the requirements necessary to issue an injunction and enjoined the Adversary Proceeding Defendants from filing or continuing to prosecute any Asbestos-Related Claims against the Non-Debtor Protected Parties on any theory. (Doc. No. 1-1). Since the Bankruptcy Court granted the injunction pursuant to section 105 of the Bankruptcy Code, it did not consider the Debtor's alternative request for declaratory relief that the automatic stay extended to the Non-Debtor Protected Parties. (*Id.*).

Pursuant to 11 U.S.C. § 105(a), the bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. This section "empowers the bankruptcy court to enjoin parties other than the bankrupt from commencing or continuing litigation" and to stay related third-party litigation against non-debtors. *A.H. Robbins Co., Inc. v. Piccinin*, 788 F.2d 994, 1002-03 (4th Cir. 1986) (quotations omitted); *Willis v. Celotex Corp.*, 978 F.2d 146, 149 (4th Cir. 1992); *Kreisler v. Gold*, 478 F.3d 209, 215 (4th Cir. 2007). Under section 105(a), bankruptcy courts may stay an action against a third party "when the court finds 'that failure to enjoin would effect [sic] the bankruptcy estate and would adversely or detrimentally influence and pressure the debtor through the third party'" or when it would otherwise "have an adverse impact on the Debtor's ability to formulate a Chapter 11 plan." *Willis*, 978 F.2d at 149 (quoting *Piccinin*, 788 F.2d at 1003).

When considering whether to issue an injunction pursuant to section 105(a), courts in the Fourth Circuit apply the four-part test for preliminary injunctions, tailored as needed for bankruptcy cases. *Piccinin*, 788 F.2d 994 at 1008-09; *In re Chicora Life Center, LC*, 553 B.R. 61,

---

3552350, at *19 (Bankr. W.D.N.C. Aug. 11, 2021).

64 (D.S.C. 2016). Thus, the relevant test for determining whether to grant an injunction pursuant to section 105(a) is: (1) likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) the balance of equities; and (4) whether an injunction is in the public interest. *In re Litchfield Co. of S.C. Ltd. P'ship*, 135 B.R. 797, 805 (W.D.N.C. 1992); *In re Chicora Life Center, LC*, 553 B.R. 61, 64 (D.S.C. 2016). Each part of the test must separately be considered and satisfied in order for courts to issue an injunction. *Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013).

Appellants make a host of different arguments as to why Debtor failed to prove each of the four-part test. Appellants largely attempt to ask this Court to replace the Bankruptcy Court's judgment with its own judgment and decide the matter differently, by arguing a variety of reasons why the Bankruptcy Court's reasoning was incorrect. The Bankruptcy Court did not rest its decision on an incorrect legal standard, a clearly erroneous finding of a material fact, or misapprehend the law with respect to underlying issues in litigation. The Court concludes the Bankruptcy Court did not abuse its discretion when analyzing the four-factors and ultimately issuing the injunction.

    1.    <u>Likelihood of Success on the Merits</u>

In the bankruptcy context, courts interpret the success on the merits factor to require the debtor to show it has a reasonable likelihood of successful reorganization. *Chicora*, 553 B.R. at 66; *Brier Creek*, 486 B.R. at 696; *Litchfield*, 135 B.R. at 807 ("This test is satisfied by showing that there is a probability of successfully effectuating a plan of reorganization."). When concluding the Debtor met this factor, the Bankruptcy Court looked to the Debtor's approximately $145 million in assets, plus the Debtor's ability to draw from the Funding Agreement as needed to fund a section 524(g) trust and pay any administrative costs of the bankruptcy case. First, the Future Claimants Representative argues the Bankruptcy Court applied the incorrect legal standard when

14

evaluating this factor because the Bankruptcy Court stated that the Debtor had a realistic possibility of reorganization, rather than a reasonable likelihood of a successful reorganization. While the Bankruptcy Court's Order Granting Injunction stated the Debtor has a realistic possibility of reorganization, the Future Claimants Representative parses the Bankruptcy Court's words to argue it applied the incorrect legal standard. The Bankruptcy Court's analysis clearly articulated and applied the correct legal standard when analyzing this factor. When analyzing this factor the Bankruptcy Court looked to the Debtor's assets and resources for a successful reorganization and noted "there is no reason . . . to conclude at this point that the Debtor does not have the ability to fully fund a section 524(g) trust, as well as the administrative costs of its Chapter 11." (Doc. No. 1-1).

Appellants also make various arguments contradicting the Bankruptcy Court's reasoning, which the Court finds unavailing and do not convince the Court that the Bankruptcy Court abused its discretion. Here, the Debtor has significant assets on its own and also has contractual rights under the Funding Agreement by which the Bankruptcy Court reasonably concluded the Debtor has a reasonable likelihood of successful reorganization. The Funding Agreement is not so unreliable or "illusory" that the Court can conclude the Bankruptcy Court, which is intimately familiar with the Debtor's Bankruptcy Case and reorganization efforts, abused its discretion in determining the Debtor has a reasonable likelihood of successful reorganization.

2. Irreparable Harm

The Bankruptcy Court concluded that the failure to enjoin litigation against the Non-Debtor Protected Parties would irreparably harm the Debtor because of its indemnification obligations, diversion of key personnel, concerns with *res judicata* and collateral estoppel, and causing certain evidentiary concerns that the Debtor would be forced to litigate. Appellants argue the Bankruptcy Court was incorrect for various reasons including that the Funding Agreement is circular, Debtor

15

can obtain additional personnel if needed, and New GP has sufficient funds to defend any litigation if an injunction is not granted such that any concerns or effects on the Debtor would be sufficiently addressed by the Non-Debtor Protected Parties. These arguments do not present any grounds sufficient for the Court to conclude the Bankruptcy Court abused its discretion rather than ask the Court to replace the Bankruptcy Court's judgment with its own. Nor do they convince the Court. The Court agrees with the Bankruptcy Court that the Debtor would be irreparably harmed if the injunction was not granted and litigation against the Non-Debtor Parties continued in numerous courts across the country, with potentially lasting consequences on the Debtor's ability to defend itself, its potential liability, and its efforts to effectively reorganize.

### 3. Balance of the Equities

The Bankruptcy Court concluded the entire purpose of the Debtor's Chapter 11 bankruptcy case would be defeated if the litigation in other forums continued against the Non-Debtor Protected Parties and a section 524(g) trust will provide all claimants with an efficient means to equitably resolve their claims. The Bankruptcy Court did not abuse its discretion when balancing the equities among the various interests, and Appellants arguments otherwise are unavailing. While the Court is sympathetic to the human needs of the claimants noted by Appellants, there are numerous other relevant factors, which the Bankruptcy Court considered and weighed. The Court agrees, by enjoining the litigation to allow the Debtor an opportunity to successfully reorganize through a section 524(g) trust, if ultimately successful, the claims potentially can be resolved for all current and future claimants.

### 4. Public Interest

Finally, the Bankruptcy Court did not abuse its discretion in concluding the public interest is served by allowing a successful reorganization. Appellants ask this Court to "look honestly and skeptically at the actions" of the Debtor to the "real public health and societal costs." Again, the

16

Case 3:20-cv-00105-RJC   Document 12   Filed 01/06/22   Page 16 of 17

Court does not find that the Bankruptcy Court abused its discretion when applying this factor. Allowing for a successful reorganization serves the public interest because it would allow for the resolution of thousands of asbestos-related claims in a fair and efficient manner through a section 524(g) trust. This would ensure claimants, present and future, are treated fair and equitably, result in consistency among claimants, and promote judicial economy. Additionally, while the Appellants downplay the importance of successful reorganizations, the ability for entities to have the opportunity to successfully reorganize is an important public interest.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Appellant Future Claimants Representative's Motion for Leave to Appeal, (Doc. No. 2), is **DENIED as moot**; and
2. The Bankruptcy Court's Preliminary Injunction Orders are **AFFIRMED**.
3. The Clerk of Court is directed to close this case.

Signed: January 6, 2022

Robert J. Conrad, Jr.
United States District Judge